IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES WRIGHT, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 20-cr-10030-JES |
| v. | ) No. 23-cv-1204-JES |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner James Wright has filed a motion under 28 U.S.C.A. § 2255 to vacate, set aside, or correct his sentence. Doc. 67 (the "Motion"). The government filed a response (Doc. 76, the "Response"), and Wright replied. Doc. 78 (the "Reply). For the reasons indicated herein, the Motion is DENIED in its entirety and the Court declines to issue a Certificate of Appealability ("COA"). Additionally, no evidentiary hearing is necessary.

**I.   BACKGROUND**

The facts underlying Wright's conviction and trial were summarized in the Seventh Circuit's order on his direct appeal. *See United States v. Wright*, 21-2676, Doc. 23 at 2-3 (7th Cir. 2022) (per curium); *see also* Doc. 65. For ease of reference, the Court shall provide an excerpt, in verbatim, from the Seventh Circuit's opinion as to the relevant factual background.[1]

In June 2020, Wright responded to a posting on Craigslist.org by a grandmother purportedly caring for granddaughters, who invited anyone "a little bit $ick" to contact her. Unbeknownst to Wright, the poster, who called herself "Baily," was an FBI agent. Baily told

---

[1] When necessary, the Court shall discuss additional facts and procedural history in conjunction with its analysis.

Wright via email that she was "selling experiences" with her 15- and 10-yearold granddaughters and, at Wright's request, sent him a picture of the 15-year-old (actually a 28-year-old confidential human source). (Wright also solicited sex from Baily, who declined.) After a three-week break in communication, Wright emailed to ask if others had purchased sex with the girls and if he could speak to her "not over the internet."

After a few days of phone calls and text messages, Wright and Baily agreed that Wright would pay $100 to receive oral sex from the 15-year-old. Wright, an auto mechanic, suggested meeting at his shop, and they set a date and time. On that day, Wright told Baily that he felt "reluctant" and asked for proof that she was "NOT the police." Baily sent a series of more revealing photos to reassure him. Wright agreed to continue and sent Baily a photograph of a $100 bill to show he had the agreed amount.

At the agreed meeting time, Baily sent Wright a text message informing him that the girl was in a minivan parked near Wright's shop. As Wright approached the minivan, federal agents stopped him and arrested him on a criminal complaint. He had a $100 bill in his pocket, and its serial number matched the one on the bill Wright had displayed earlier. Wright agreed to answer questions in a recorded post-arrest interview. Two weeks later, a grand jury filed a two-count indictment. Count One charged attempted trafficking of a minor, 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1594, and Count Two charged committing a felony offense involving a minor while required to register as a sex offender, id. § 2260A.

The prosecution proceeded to a one-day bench trial. The parties stipulated that Wright was required to register as a sex offender at the time he set the meeting with the girl. The government introduced into evidence records of all communications between Wright and Baily. This included a recording and transcript of a phone call in which Wright asked about the price of oral sex from

the 15-year-old ("All right, um, how much for a blowjob?"), discussed what time he would meet the girl for the encounter ("Say about 3? Will that work?"), how much time he expected it to take ("[I'd] hate to get a [hotel] room for 15 minutes"), and provided an address for the meeting.

The government also introduced the text messages in which Wright expressed fear that Baily was with law enforcement and asked for something to "ease [his] mind." When Baily offered to send a picture of the girl in her bra, Wright responded, "you can do better than that." When he then received a picture of the girl covering her bare breasts, he responded that Baily was "getting closer." After receiving these photos and sending one of the $100 bill, Wright confirmed the price for oral sex and again asked Baily to confirm she was "NOT affiliated with ANY law enforcement agencies."

The government also introduced a recording and transcript of Wright's post-arrest statements. Here, Wright admitted that he knew he was meeting a 15-year-old. But he denied that he intended to pay for oral sex with her, explaining that he just wanted to talk and had asked for explicit photographs to decide whether to report Baily to law enforcement. He said that he had been discussing automotive repairs with Baily and that a "bj" referred to a "brake job." But when confronted with a recording of the phone call in which he expressly agreed to pay $100 for "a blow job," Wright proclaimed: "Oh shit, I'm going back to prison."

At the close of the government's case-in-chief, Wright moved for a judgment of acquittal based on insufficient evidence. Defense counsel emphasized Wright's post-arrest statements, in which he denied intending to receive oral sex and explained that he approached the van out of curiosity. Although counsel acknowledged that Wright's statements about a "brake job" were a "bad lie," he referred to Wright's fear that the agents would not believe that he was not looking for sex. Counsel also emphasized that, because no girl was waiting for Wright, it was impossible

3

to know if Wright truly intended to follow through with the planned transaction. The [Court] denied the motion. Wright did not testify or present evidence.

The [Court] then found Wright guilty of both counts and entered written findings of fact and conclusions of law. Later, Wright was sentenced to 324 months on Count One and a consecutive 120 months on Count Two, for a total of 444 months' imprisonment, plus supervised release for life. Wright appealed, challenging the sufficiency of the evidence of attempted trafficking. *See* Doc. 53. The Seventh Circuit affirmed the Court's judgment. *See* Doc. 65-2 (USCA Final Judgment). The Court now turns to the Motion.

## II.    LEGAL STANDARD

"Federal prisoners who seek to collaterally attack their conviction or sentence must ordinarily bring an action under § 2255, 'the federal prisoner's substitute for habeas corpus.'" *Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017) (quoting *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). "Relief under [§ 2255] is an 'extraordinary remedy.'" *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (quoting *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)). Such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

However, § 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that he is actually innocent. *See Grzegorczyk v. United*

*States*, 997 F.3d at 743(7th Cir. 2021); *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). However, "claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion." *Perez v. United States*, JPS-23-718, 2023 WL 4423908, at *3 (E.D. Wis. July 10, 2023) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

Furthermore, a district court must liberally construe a *pro se* a § 2255 motion. *See United States v. Lomax*, 51 F.4th 222, 227 (7th Cir. 2022). But, "it [is] not [a district] court's duty to imagine every possible argument for [a § 2255 movant], even when liberally construing his pro se filings." *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021). Finally, "'[w]hen considering a § 2255 motion, the district court reviews the record and draws all reasonable inferences in favor of the government.'" *United States v. Mandell*, ARW-18-271, 2022 WL 1499931, at *3 (N.D. Ill. May 11, 2022) (quoting *United States v. Saleh*, RWG-15-11552, 2016 WL 2766305, at *2 (N.D. Ill. May 13, 2016) in turn citing *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992)).

### III.   ANALYSIS

In the Motion, Wright brings three grounds for relief – all of which concern allegations that his trial counsel provided ineffective assistance.

"The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U. S. 668, 686 (1984)). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Because the *Strickland* test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotations and citation omitted). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" *Atkins v. Zenk*, 667 F.3d 939, 944–45 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)). In examining counsel's conduct, the courts are "highly deferential" and presume that a counsel's decisions constitute a reasonable litigation strategy. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005); *see also United States v. Berg*, 714 F.3d 490, 499 (7th Cir. 2013).

Ground 1

In Ground 1, Wright argues that his trial counsel was ineffective due to a failure to meaningfully test the Prosecution's case in chief. Doc. 67 at 4-5. For this claim to succeed, Wright must show that his "'attorney's failure'" was "'complete.'" *Viren v. United States*, SLD-17-4335, 2021 WL 918058, at *6 (C.D. Ill. Mar. 10, 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 697 (2002)).

The government has provided an affidavit of Wright's Trial Counsel, John P. Lonergan, indicating Lonergan's efforts to test the government's case and investigate possible defenses. Doc. 76-1 at 1-5. The government also proffered various correspondences between Lonergan and Wright concerning the strength of the government's case and Lonergan's pursuit of an effective

6

defense. *Id.* at 16. These exhibits make clear that the government's case was incredibly strong, as the facts were "not in dispute or reasonably disputable." *Id.* at 1. Given the overwhelming evidence, Lonergan's trial strategy was limited. And so, after discussing possible avenues with his client, Lonergan presented the defense that Wright did not intend to go through with the above-noted sexual misconduct. And so, Lonergan decided to ask questions that were "clarifying or fishing" in hopes of finding a fact that was beneficial to this defense. Lonergan's strategy was reasonable and served as a way to meaningfully test the government's case. *Id.* at 4. Accordingly, Wright is unable to show that Lonergan's failure was complete, and so Ground 1 must fail.

Furthermore, Wright fails to provide a single example of how Lonergan should have challenged the government's case. Instead, Wright parrots the questions asked by Lonergan and asserts, without a basis for doing so, that they were ineffective. *See* Doc. 67 at 4-5. Thus, Wright's claim cannot succeed as he offers nothing more than a "'blank record, peppered with the [his] own unsupported allegations of misconduct.'" *United States v. Smith*, 989 F.3d 575, 583 (7th Cir. 2021) (quoting *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001)). Such an utter lack of "actual proof of [his] allegations" cannot meet the necessary threshold to allow this claim to proceed. *Dooley v. United States*, 40 F. Supp. 3d 1038, 1049 (C.D. Ill. 2014) (quoting *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005)).

In light of the foregoing, Wright's Motion as to Ground 1 is DENIED.

Ground 2

In Ground 2, Wright argues that Lonergan was ineffective for failure to investigate any colorable defense strategy. Doc. 67 at 5. The record shows that Lonergan did in fact investigate possible defenses, but given the strength of the case, he located no suitable defense other than arguing Wright was conducting a citizen investigation. *See* Doc. 76-1 at 10. Lonergan's "[f]ailure

to raise a losing argument does not constitute ineffective assistance of counsel." *United States v. Shelton*, TLS-19-363, 2022 WL 1102844, at *4 (N.D. Ind. Apr. 12, 2022) (citation omitted). Additionally, Wright does not identify a single defense (other than entrapment, discussed *infra* as to Ground 3) that should have been raised. Doc. 67 at 5. This is fatal to his claim. *See Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) ("'[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information….'") (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990)). Accordingly, Wright's Motion as to Ground 2 is DENIED.

Ground 3

In Ground 3, Wright argues that Lonergan was ineffective for failure to raise the affirmative defense of entrapment at trial. Doc. 67 at 5. The government argues that Lonergan was right not to pursue the defense of entrapment, because it was inconsistent with Wright's claim of innocence, and the record evidence did not support the defense. *See* Doc. 76 at 34-37.

"Entrapment is a defense to criminal liability when the defendant was not predisposed to commit the charged crime before the intervention of the government's agents and the government's conduct induced him to commit it." *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014) (en banc). "A defendant can be considered predisposed if he was ready and willing to commit the charged crime and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." *United States v. Blitch*, 773 F.3d 837, 845 (7th Cir. 2014) (citation omitted). Inducement requires "that the government solicited the crime" and engaged in other conduct, such as, *inter alia*, "repeated attempts at persuasion, fraudulent representations, [and] threats…." *United States v. York*, 48 F.4th 494, 02 (7th Cir. 2022) (citation omitted). The government need only show that "*either* that the defendant

8

was predisposed to commit the crime or that there was no government inducement." *United States v. Leal*, 72 F.4th 262, 267 (7th Cir. 2023) (citation omitted).

As to predisposition, Wright was previously convicted of Aggravated Criminal Sexual Abuse of person who was 15 years old at the time of the offense of conviction, *i.e.*, the same age as the individual that he planned to sexually abuse in this case. Doc. 51 at 11. Furthermore, Wright is required to register for a lifetime as a Sexual Predator but was out of "compliance with Sex Offender Registration Notification requirements" at the time of the instant offense. *Id.* These facts alone, while not conclusive, demonstrate that Lonergan's decision not to raise the entrapment defense was a reasonable one. *Cf. United States v. Anderson*, 55 F.4th 545, 555-56 (7th Cir. 2022) (indicating that a defendant convicted of a sex offense showed a lack of predisposition because he "had no prior criminal record" of that kind, nor was there evidence that he had "interest in underage girls"). Additionally, Wright's escalating requests for racier photographs of the child in combination with his discussions concerning the type and duration of sexual activity further illustrates his predisposition to commit the offense. *See United States v. Jones*, 79 F.4th 844, 853 (7th Cir. 2023) ("…post-contact evidence can support a conclusion that the defendant would have likely committed the crime on his own and was therefore predisposed.") (citing *Jacobson v. United States*, 503 U.S. 540, 550 (1992)).

Regarding the second factor, it does not appear that the government engaged in conduct that rises to the level of inducement, as Wright laid the groundwork for the criminal offense. It was Wright, not the government agent (*i.e.,* "Baily"), who suggested a blowjob. It was also Wright who asked that the 15-year-old girl be taken to a location near his autobody shop rather than a hotel as suggested by the government agent. Additionally, there were lulls in the conversation between Wright and the government agent, but it was always Wright who rekindled the

communication. For example, after Wright initiated the discussion on Craigslist, the government agent did not respond for two days, and he sent a follow-up message asking for a picture. Then, after a three-week pause in communication, Wright again reopened the discussion. Ultimately, Wright's conduct and interactions with the government agent greatly minimized any need for the government to induce him into committing the instant offense, and so, Lonergan was not ineffective in failing to raise the defense of entrapment.[2]

There exists another basis for denying Wright's Motion.

As Lonergan correctly noted, raising the private citizen investigation defense and entrapment "would be arguing, 'I didn't do it, but if I did, I was entrapped.'" Doc. 76-1 at 15. "Technically" Wright "could have argued entrapment while denying" his guilt, "but inconsistent defenses usually are the functional equivalent of a guilty plea." *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011) (citing *Mathews v. United States*, 485 U.S. 58 (1988)). Here, Wright insisted that he was innocent throughout the proceedings. Even now, in the Reply, he asserts that he "was simply taking action as a private citizen under the authority of the State of Illinois," Doc. 78 at 1, and that he was doing his "part to help stop a grandmother who was prostituting her granddaughters." *Id.* at 2. Thus, Lonergan acted well within the realm of professional competence in choosing not to argue two diametrically opposed defenses at trial. *Cf. Martin v. United States*, JPG-15-311, 2017 WL 228179, at *12 (S.D. Ill. Jan. 19, 2017) (citations omitted).

---

[2] Although neither party argues this point, it seems relevant that Wright initially requested to have sex with the adult government agent, rather than the minor children, and that the government agent explained that the children enjoy the arrangement because they receive some of the money. The Seventh Circuit recently discussed to an out-of-circuit case that indicated the importance of these factors. *United States v. Mercado*, 53 F.4th 1071, 1081-82 (7th Cir. 2022) (citing *United States v. Pérez-Rodríguez*, 13 F.4th 1 (1st Cir. 2021)). Nevertheless, these aspects of the inducement analysis do not render Lonergan's counsel ineffective.

At the end of the day, Lonergan was placed between a rock and a hard place. Neither the citizen investigation argument nor the entrapment defense was strong. And, given the inconsistent nature of the two possible defenses, he pursued a trial strategy that comported with his client's claim of actual innocence. With these considerations in mind, the Court recognizes that Lonergan did an admirable job in providing Wright with effective assistance of counsel.

For the reasons discussed above, the Motion is DENIED as to Ground 3.

## IV.    EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 28 U.S.C. § 2255(b). Here, no hearing is necessary, because Wright's claims of ineffective assistance of counsel do not entitle him to relief even if all his allegations are true.

## V.    CERTIFICATE OF APPEALABILITY

If Wright seeks to appeal this decision, he must first obtain a COA which may issue only if a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Wright has not made such a showing. Accordingly, the Court declines to issue a COA.[3]

## VI.    CONCLUSION

Based on the foregoing, Wright's § 2255 motion (Doc. 67) is DENIED in its entirety, and no evidentiary hearing is necessary. The Court further DECLINES to issue a certificate of appealability. Additionally, Wright's motion to proceed *in forma pauperis* (Doc. 68) in connection

---

[3] Although Wright "may not appeal the denial of a certificate of appealability, [] he may seek a certificate from the Court of Appeals for the Seventh Circuit." *Wyatt v. United States*, JPG-15-795, 2017 WL 2180815, at *2 (S.D. Ill. May 18, 2017) (citing Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts).

with his § 2255 motion is DENIED as MOOT, because there is no filing fee for a § 2255 motion.

*See United States v. Douglas*, SLD-16-20038, 2023 WL 3168652 (C.D. Ill. Apr. 28, 2023).

ENTERED this 13th day of February 2024.

s/ *James E. Shadid*
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE
